| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO<br><br>Court Address:<br>1437 Bannock Street<br>Denver, CO 80202 | ▲ COURT USE ONLY ▲ |
| **Plaintiff:**<br>SHELLEY D. LEAVY<br><br>**v.**<br><br>**Defendants:**<br>THE LINCOLN NATIONAL LIFE INSURANCE COMPANY/ LINCOLN FINANCIAL GROUP COMPANY, LIBERTY LIFE ASSURANCE COMPANY OF BOSTON and SISTERS OF CHARITY OF LEAVENWORTH HEALTH SYSTEM, INC. | Case Number: 20CV30913<br><br>Div.: 203 |
| Attorney for Plaintiff: A. Craig Fleishman<br>Mary Ewing Law Offices, PC<br>3601 S. Pennsylvania St.<br>Englewood, CO 80113<br>Phone Number: 303-761-1400<br>Fax Number: 303-761-8100<br>E-mail: Craig.Fleishman@MaryEwingLaw.com<br>Atty. Reg. #: 6820 | |
| **AMENDED COMPLAINT AND JURY DEMAND** | |

COMES NOW Plaintiff, by and through her attorney, A. Craig Fleishman of Mary Ewing Law Offices, PC, and files this Amended Complaint and demands a jury trial for the following claims for relief:

## GENERAL ALLEGATIONS

1. Plaintiff is a Colorado resident and at all times material hereto was employed by Sisters of Charity of Leavenworth Health Systems, Inc.

2. Defendants, Lincoln National Life Insurance Company (hereinafter "Lincoln") and Liberty Life Assurance Company of Boston (hereinafter "Liberty") are foreign corporations with principal situs in Boston, Massachusetts and is a Massachusetts entity. It transacts business

EXHIBIT

A-3

in Colorado and did so at all material times hereto. It is subject to jurisdiction of this Court pursuant to §13-1-124, C.R.S.

3. Sisters of Charity of Leavenworth Health Systems, Inc. (herein referred to as "Health") does business in Colorado utilizing, at times, the trade name SCL Health. Health is a Kansas entity authorized to transact business in Colorado. It is subject to Court jurisdiction pursuant to §13-1-124, C.R.S.

4. Plaintiff's Husband, Norman Douglas Ashford, passed away on January 3, 2019 while Plaintiff was an employee of Health. The autopsy report stated, in part, "undetermined natural cause" concerning cause of death.

5. At all times material hereto, Health offered to its employees certain benefits including a medical plan which is a self-issued plan through CIGNA and certain group life insurance benefits. Plaintiff was in insured at all times material thereto through a life policy for Sisters of Charity of Leavenworth Health System Policy Number SA3-860-061065-01. The aforesaid policy was and is through Liberty.

6. Plaintiff selected SCH Health benefits for the year 2019 on October 25, 2018, including spousal life insurance of $150,000. See Annual Enrollment Summary "as of 01/01/209" and confirmation statement "Benefits Effective January 1, 2019." Said Application states, in part, that "coverage may require evidence of insurability". Such verbiage is not mandatory. A Confirmation Statement stating "Benefits Effective January 1, 2019" was sent to Plaintiff by SCL Health.

7. Plaintiff reasonably expected Health would facilitate her application for life insurance benefits in a timely and appropriate manner as done for her and other Health Employees with Liberty.

8. The day of Mr. Ashford's death, a letter was sent to Plaintiff by Liberty, postmarked four days after his death, seeking medical information related to the insurance application.

9. Plaintiff contacted Liberty on February 5, 2019 seeking the $150,000 benefits due her as beneficiary of the life insurance benefit for which she enrolled her husband. She was advised thereafter by Liberty that there was no insurance, and it blamed SCL Health for not timely getting enrollment information to Liberty. Plaintiff provided the medical information sought by Liberty post death of Mr. Ashford on January 21, 2019.

10. SCL Health had meetings thereafter with Plaintiff and advised her she needed to deal with Liberty related to her claim.

11. Thereafter, Health agreed orally to provide Plaintiff's counsel with its file concerning communications between it and Liberty concerning Plaintiff's insurance application at issue. Despite said oral commitment, Health failed to promptly provide any such information although multiple written follow-up requests for same were sent to it thereafter.

12. Liberty sent several requests for completion of forms to Plaintiff after her husband's death, one on May 14, 2019 threatening to start an escheatment process with the State of Colorado if Plaintiff did not respond to this meritless and meaningless threat. She did respond to same.

13. Although Plaintiff, through her counsel, requested the $150,000 death benefits due from Liberty, it sent her a check for only $25,397.95 ($25,000 plus interest) which "represents full settlement of the Group Life Insurance Claim." Such was not the result of any settlement negotiations. It was not deposited. Said check is dated June 18, 2019, approximately

five (5) months after Mr. Ashford's death. Mr. Ashford was not a designated beneficiary on Plaintiff's policy designations for $25,000.

14. On August 14, 2019, Plaintiff sent a written appeal to Liberty by fax and hard copy by US Postal Services in an attempt to remedy the wrongful denial/delay in processing and paying her $150,000 claim. Through Liberty's policy provides that an appeal submitted would be ruled upon within 60 days, three (3) months passed with no response until Plaintiff's counsel contacted Liberty approximately November 19, 2019. Plaintiff's counsel was directed to only communicate with Health further.

15. Plaintiff's counsel requested in the November communication that all further communications be directed to him by Liberty as Plaintiff had counsel and sought Liberty's position whether the non-response related to the 60-day appeal timeframe was approval of same. Only thereafter did Liberty respond, outside the aforementioned 60-day timeframe, denying the appeal which denial was sent directly to Plaintiff with only a copy to Plaintiff's counsel.

16. Requests have been made, in writing, to Liberty for its file related to Plaintiff's claim. All such requests have been ignored.

17. In certain written statements to Plaintiff, post death of her husband, Health listed her husband as a beneficiary under Dependent Life Policy EOT but reduced coverage from $150,000 sought to $50,000. This was not requested by Plaintiff, nor the result of settlement negotiations.

18. Plaintiff's spouse was covered, at his death, by a Health Spousal Medical Plan with CIGNA. Such demonstrates his insurable medical status.

19. Pursuant to a request from Health, a copy of Mr. Ashford's medical records and the coroner's report were sent to Health at its request saying it would aid in in concluding the

medical insurability of Mr. Ashford. No timely response was received from Health after it was provided voluminous medical records and the coroner's report at its request.

**FIRST CLAIM FOR RELIEF**

20. Incorporated herein and made a part hereof are paragraphs 1 through 19.

21. Health, related to the matters set forth herein, acted as Plaintiff's agent for Plaintiff to act on behalf of Plaintiff in timely and fully submitting to Liberty all appropriate documentation to provide it with the information to process the application including $150,000 of life insurance coverage for Plaintiff's husband.

22. Health had the authority, power and right to act on behalf of Plaintiff related to the matters set forth herein.

23. Health materially breached its agency duty to Plaintiff, on information and belief, by failing to timely submit the appropriate information and documentation to Liberty and/or to seek payment from Liberty to Plaintiff under Health's Group Policy aforementioned.

24. Health's agency duties to Plaintiff included good faith, honesty, full disclosure and primacy of Plaintiff's interests over its own.

25. As a direct and proximate result of the breach of the agency contract afore described, Plaintiff has suffered damages of $150,000, plus attorney fees, costs and interest and potential expert fees.

**SECOND CLAIM FOR RELIEF**

26. Incorporated herein is each paragraph of Plaintiff's First Claim for Relief.

27. Implied in the agency contract/agreement between Plaintiff and Health was an implied duty of good faith and fair dealing which Health has breached as aforenoted by acts or

omissions contrary to the agreed common purpose and the parties' reasonable expectations as aforenoted.

28. As a direct and proximate result of the breach by Health of the implied duty of good faith and fair dealing aforementioned, Plaintiff has suffered damages of $150,000 plus attorney fees, costs and interest and potential expert fees.

## THIRD CLAIM FOR RELIEF

29. Incorporated herein is each paragraph of Plaintiff's First Claim for Relief and paragraphs 1-19.

30. Liberty beached the implied and or express contract between it and Plaintiff by failing to pay the $150,000 beneficiary benefit aforenoted.

31. Alternatively, Plaintiff was a third-party beneficiary of the Group Life Policy between Liberty and Plaintiff's employer and, as a result thereof, is entitled legally to payment of the $150,000 beneficiary benefit aforenoted.

32. Implied in the contract afore described is a duty of good faith and fair dealing by Liberty which it breached by non-payment of the $150,000 benefit noted.

## FOURTH CLAIM FOR RELIEF

33. Incorporated herein and made a part hereof is each paragraph of Plaintiff's Third Claim for Relief and paragraphs 1-19.

34. Liberty acted unreasonably and in breach of faith in delaying and thereafter denying payment of the $150,000 claim of Plaintiff afore described.

35. Liberty knew its conduct and position were unreasonable or it recklessly disregarded the fact its conduct and position were unreasonable.

36. Said position and conduct by Liberty proximately caused Plaintiff damages of $150,000 plus attorney fees, costs, interest and potential expert witness fees.

37. Defendants' unreasonable conduct and position encompassed failure to pay the subject claim timely and fully which is an act a reasonably careful insurance company would not do or failure to pay said claim fully and timely under the same or similar circumstances a reasonably careful insurance company would do and would seek to protect Plaintiff from her damages.

38. As a direct and proximate result of said Defendants' acts and/or omissions, Plaintiff has suffered $150,00 in damages plus attorney fees, costs, interest and potential expert fees.

39. Plaintiff is also entitled, per §10-3-1115 and §10-3-1116, C.R.S. to her attorney fees and double damages, or $300,000.

## JURY DEMAND

Plaintiff hereby requests a trial to a jury of six.

WHEREFORE, Plaintiff plays for judgment against the Defendants, jointly and severally, in the amount of $150,000 plus attorney fees, costs, interest, and expert fees against Liberty for an additional $150,000 pursuant to statute.

Respectfully submitted this 12th day of March, 2020.

ATTORNEYS FOR PLAINTIFF

MARY EWING LAW OFFICES, PC

*s/A. Craig Fleishman*
Original signature on file